**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREAT NORTHERN INSURANCE | ) | |
| COMPANY a/s/o GIDEON SEARLE and | ) | |
| NANCY S. SEARLE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 2012 CV 9343 |
| | ) | |
| CELLAR ADVISORS, LLC, | ) | Judge:       James B. Zagel |
| Defendant. | ) | Mag. Judge:   Arlander Keys |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾) | | |
| | ) | |
| CELLAR ADVISORS, LLC, | ) | |
| Third Party Plaintiff, | ) | |
| and Counter-Defendant, | ) | |
| v. | ) | |
| | ) | |
| SATARIA ACQUISITION LLC d/b/a | ) | |
| FLAGSHIP LOGISTICS GROUP, | ) | |
| Third Party Defendant, | ) | |
| and Counter-Plaintiff. | ) | |

**THIRD PARTY DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Third Party Defendant, Sataria Acquisition LLC d/b/a Flagship Logistics Group ("Flagship"), by its attorneys, Sullivan Hincks & Conway, submits this Memorandum in Support of its Motion for Summary Judgment seeking an Order granting Flagship summary judgment on Cellar Advisors, LLC's ("CA's") third party complaint and on Flagship's counterclaim for unpaid invoices and statutory attorney fees:

**I.     INTRODUCTION.** Flagship is entitled to summary judgment on CA's third party complaint because the undisputed material facts show that Flagship's alleged breach of its oral contract[1] did not cause any damage. Specifically, Flagship is entitled to Summary Judgment because CA conclusively admits that the wine that was the subject of the underlying Plaintiff's

---

[1] Flagship disputes any breach, i.e. arranging dry vans instead of refrigerated transportation as CA ordered dry vans, but that dispute is irrelevant to the Motion for Summary Judgment as developed hereafter.

complaint did not suffer any damage as a result of the transportation arranged by Flagship. Both CA and Flagship agree this is an uncontested fact. As such, CA cannot prove a causal link between any alleged breach by Flagship and any purported damages. Therefore, CA cannot succeed in its claim of breach of contract.

Flagship is also entitled to summary judgment on its counterclaim. CA illegally brokered transportation of the wine. Flagship had the wine moved. CA did not pay the agreed amount of $9,810 for services rendered by Flagship. CA brokered the transportation without a license in violation of 49 U.S.C. § 13902 and failed to transmit payment in violation of 49 C.F.R. § 371.10. Flagship is entitled to damages under the private right of action allowed under 49 U.S.C. § 14704(a)(2) and its attorneys' fees under 49 U.S.C. § 14704(e).

II.     **BACKGROUND.** This case arises out of three shipments of wine transported from Chicago, IL to Naples, FL. (SOF 10) On June 1, 2012, Gideon Searle contracted with CA, a self-professed wine consultant, to organize Mr. Searle's wine collection and, among other things, CA specifically contracted to arrange for its transportation. (SOF 2, 8).

CA arranged transportation through Flagship, a transportation intermediary with motor carrier broker authority. CA's contract with Mr. Searle specified refrigerated transportation. CA instead requested Flagship to arrange cheaper dry van transportation.  Flagship complied and arranged for dry vans to transport the three shipments. At destination, two of the three shipments[2] were declared a loss without anyone tasting the wine or opening any of the black plastic wrapped pallets or cases on the pallets except a case or two. (SOF 32, 38-39, 43-44). Further, a loss was declared despite the fact that no one knows which pallets from the three shipments were reloaded and subsequently moved to Florida Freezer's warehouse in Fort Meyers, Florida for storage. (SOF 27-28, 31).

---

[2] One of the three shipments was deemed to be in good condition. (SOF 29).

**III.    UNDISPUTED MATERIAL FACTS:** In June 2012, CA began preparing Mr. Searle's wine for shipment. CA boxed the wine maintained at Mr. Searle's Winnetka facility under the direction of Joseph Mooney. (SOF 16-17). The Winnetka facility housed the great majority of Mr. Searle's collection. (SOF 15).

CA boxed the wine and entered the vintage and appellation of each of the wine bottles into a computer data base. (SOF 17). Mr. Mooney and CA's team simply put all of the bottles into boxes without assessing the condition of the bottles and without recording the condition of the bottles. (SOF 18.) According to Mr. Mooney, CA "shipp[ed] everything whether it was value, valueless or valuable. We were emptying that cellar. We were not making salable decisions at that point." (SOF 18). In other words, CA did nothing to determine that Mr. Searle's bottles were in good condition before they were shipped.

To consolidate the shipments, CA loaded the bottles into a refrigerated straight truck and transported them to LaGrou Distribution Systems' Warehouse in Des Plaines, Illinois where the wine was stored at 65 degrees. (SOF 20). Mr. Searle's requirements allowed a maximum storage temperature of 55 degrees. (SOF 20).

Thereafter, from July 2 through July 6, 2014, Mr. Searle's wine at LaGrou was picked up but no one from CA was present at LaGrou's warehouse to monitor and supervise loading the wine collection onto the trucks. (SOF 21-23).

From July 6 through July 11, 2012, Mr. Mooney and his team, personally accepted the three shipments in Naples, FL. (SOF 24). On July 6, the first shipment was accepted clean, without notification of any loss or damage on the bill of lading. (SOF 25). CA offloaded eight or nine pallets of wine from the first shipment into Mr. Searle's storage facility. Mr. Mooney, CA's

3

only eyewitness, cannot verify which pallets were actually on the first trailer. (SOF 26-27). However, GN's claim included pallets that were supposed to be on this first trailer.

On July 9, 2012, the second shipment arrived. Although the bill of lading indicated 80 degrees, Plaintiff made no claim on this shipment that was accepted by Mr. Mooney. (SOF 29).

On July 11, 2012, the third shipment arrived in Naples and Mr. Mooney accepted the shipment by signing the bill of lading. (SOF 30). Mr. Mooney was not able to verify that the wine and pallet numbers that were supposed to be on the third shipments were the same ones received on the third shipment. In other words, Mr. Mooney doesn't know which wine was on which of the three trailers and which wine was put at Florida Freezer as bad wine. (SOF 31).

No one from CA or acting on behalf of CA ever opened or tasted a single bottle of wine to determine condition. (SOF 39, 42, 43).

After CA accepted delivery of all three shipments, CA eventually arranged for 17 allegedly bad pallets of wine (out of the total of 25 pallets) to be transported to Florida Freezer and Mr. Searle filed a claim with Great Northern Insurance Company ("GN"). (SOF 33-34).

GN paid Mr. Searle $2,041,406.25 for the claim. (SOF 35). GN's investigation by senior general adjuster Larry Olson involved speaking only to Marc Lazar and Lauren McIntosh of CA and to Allen Zabor, an independent adjuster. (SOF 36-37, 44). Neither Mr. Lazar nor Ms. McIntosh ever saw the wine. Despite this fact, Mr. Olson relied solely on Mr. Lazar's valuation and loss determination to make the determination on the claim. (SOF 38).

Allen Zabor, was retained solely to confirm that the wine was at Florida Freezer and to take photographs. He did not determine whether there was damage nor perform a valuation of the wine. (SOF 44). Mr. Zabor testified that he did not observe any damage to the wine, he did not open any of the bottles and he was not asked to try to determine a cause of any alleged damages.

(SOF 45-47). Before paying the claim, GN did not open any of the wine bottles or taste any of the wine, despite the fact that GN believed an expert would have to be retained to taste the wine. (SOF 48).

After paying Mr. Searle, GN sued CA for $2,041,406.25 and CA filed suit against Flagship. Extensive discovery ensued and discovery is now closed.

On April 30, 2014, Flagship made expert disclosures pursuant to FRCP 26(a)(2); Flagship designated Tom DiNardo as an expert witness; and, Flagship disclosed Mr. DiNardo's expert opinions. (SOF 50). Mr. DiNardo rendered his opinions after personally inspecting each and every bottle contained on the 17 pallets claimed to be damaged and after test check taste sampling 80 of the bottles in accordance with a protocol agreed upon by all three parties to the case. (SOF 53).

These opinions included, but were not limited to, as follows:

Based upon my research and analysis, my personal inspection of the actual wine bottles, and my extensive experience in the appraisal and assessment of wine, all of which are set forth at length in my Wine Inventory Report and Scope of Damage Evaluation attached hereto as Exhibit "D" and also the "Gideon Searle Wine Collection Appraisal Report #2" attached hereto as Exhibit "E", I conclude to a reasonable degree of certainty that 117 bottles out of 6,012 wine bottles in the collection suffered damage or were destroyed as a result of heat damage.

Based upon my research and analysis, my personal inspection of the actual wine bottles, and my extensive experience in the appraisal and assessment of wine, all of which are set forth at length in my Wine Inventory Report and Scope of Damage Evaluation attached hereto as Exhibit "D" and also the "Gideon Searle Wine Collection Appraisal Report #2" attached hereto as Exhibit "E", I conclude to a reasonable degree of certainty that the small number of bottles showing heat damage were not destroyed as a result of transportation of the whole collection from Chicago, Illinois to Naples, Florida. (Emphasis supplied) (SOF 56.)

CA did not make an expert disclosure on the April 30, 2014 due date. However, on June 2, 2014, CA disclosed as follows; after obtaining the stipulation of all parties to allow a late-served Rule 26(a)(2) disclosure:

Cellar Advisors is disclosing Mr. DiNardo as its expert witness in this matter…Cellar Advisors, LLC, pursuant to agreement between the parties, is adopting the opinions of Mr. DiNardo contained in his April 30, 2014 report. (SOF 51)

On July 10, 2014, CA filed a document entitled "Cellar Advisors LLC's Response to Plaintiff's Motion for Partial Judgment on the Pleadings" wherein CA adopted and relied upon Mr. DiNardo's deposition in its attempt to defeat GN's Renewed Motion for Judgment on the Pleadings. Among specific opinions adopted was Mr. DiNardo's statement, "So just to be very clear, my opinion is that the wine was not damaged due to transportation." (SOF 52).

By disclosing Mr. DiNardo as its expert and adopting his fact-findings and opinions as part of its Rule 26(a)(2) disclosure, CA necessarily is bound by the facts that (a) only 117 bottles out of 6,012 wine bottles suffered damage or were destroyed as a result of heat damage; and, (b) the small number of bottles showing heat damage were not destroyed as a result of transportation of the whole collection from Chicago, Illinois to Naples, Florida.

Subsequent to CA's adoption and reliance on the expertise of Tom DiNardo, GN settled with CA and GN withdrew its Motion for Judgment on the Pleadings. (SOF 57). GN's interest and participation in this case as a party is settled and is substantively withdrawn.

**IV.    STANDARD OF DETERMINATION.**    Under FRCP 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); Ellis v. CCA of Tennessee LLC, 650 F.3d 640, 646 (7th Cir. 2011). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Majors v. GE Elec. Co., 714 F.3d 527 (7th Cir. 2013) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a

6

genuine issue of material fact which requires trial." Beard v. Whitley County REMC, 840 F.2d 405, 410 (7th Cir. 1988).

> **V. ARGUMENT: There Is No Issue Of Material Fact That Cellar Advisors Suffered Damages As A Result Of A Breach By Flagship.**

In order to succeed on a claim for breach of oral contract against Flagship, CA must prove (1) the existence of a valid and enforceable contract; (2) substantial performance by CA; (3) a breach by Flagship; and (4) damages resulting from the breach. Bruno v. Univ. of Ill., 62 Ill. Ct. Cl. 194 (2009); TAS Distrib. Co. v. Cummins Engine Co., 491 F.3d 625, 631 (7th Cir. 2007) citing W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill. App. 3d 752 (Ill. App. Ct. 2004). "A party requesting damages must show causation, that is that the alleged breach is the cause of those damages, with reasonable certainty." TAS Distrib. Co., 491 F.3d at 633. It is axiomatic that Plaintiff must suffer damages *as a result of* a breach of contract in order to have a valid claim. International Supply Co. v. Campbell, 391 Ill. App. 3d 439, 450 (3rd Dist. 2009).

CA cannot establish a necessary element of its breach of contract that is its sole cause of action. CA cannot show Flagship's alleged breach caused damages. In this case, Flagship's evidence is unopposed that over 95 per cent of the wine at issue was not damaged and, for the 117 of the wine that showed signs of heat damage, such damage did not result from the transportation arranged by Flagship. (SOF 56). As established in the deposition of Joseph Mooney, the miniscule amount of damage to the wine collection discovered by the expert at Florida Freezer is consistent with the fact that CA, in preparing the shipments for transportation, did not make any determination as to the condition of the wine bottles at origin and "shipp[ed] everything whether it was value (sic), valueless or valuable. (SOF 18). It is consistent with unopposed facts that no one at CA saw the wine shipped at origin and the unopposed facts that no one can say which wine bottles came off which load.

The only witness in this case that ever looked at all of the bottles of wine that were allegedly damaged was Tom DiNardo, the expert designated and accepted by both CA and Flagship. (SOF 53). Mr. DiNardo also taste-tested a representative sample of the wine. Mr. DiNardo conclusively testified in deposition that no damage to the wine occurred during its transportation to Florida. (SOF 54). There is no competent or admissible evidence to contradict his conclusion. Before payment, GN did not test the wine. Marc Lazar, the person upon whom GN relied to pay Mr. Searle, never saw the wine and his testimony is hearsay without requisite foundation. FRE 802. (SOF 39). Further, Allen Zabor, the independent adjuster hired by GN, testified that he observed no damage to the wine. (SOF 47). He also testified that he did not open any of the bottles or taste any of the wine notwithstanding the fact that both he and Larry Olson, GN's senior adjuster, concurred that the only way to definitively determine damage would be to taste the wine. (SOF 46-48).

As noted above, CA's claim alleging that Flagship breached its oral contract with CA by arranging the transportation by dry van instead of refrigerated trailer is irrelevant to his Motion.[3] CA's adoption of the legally binding position – that the wine was undamaged and that, to the extent of the minimal damage present, the damage could not have resulted from the transportation by dry van as arranged by Flagship – disallows CA recovery as a matter of law. CA is bound to this position since it disclosed Tom DiNardo as its expert witness pursuant to FRCP 26(a)(2) and relied on his opinions in its court filings to obtain a favorable resolution.

CA cannot disavow Mr. DiNardo's facts and opinions because CA reiterated its position that the transportation by dry van did not cause any damages when it filed its response to GN's Motion for Judgment on the Pleadings. CA specifically adopted and quoted the opinions of Mr.

_____

[3] Flagship's position is that the facts at trial would show that Cellar Advisors in fact ordered dry van trailers and Flagship performed exactly as requested. In other words, Flagship would show that it did not breach its contract with Cellar Advisors in any way.

DiNardo by noting that "at his deposition, Tom DiNardo conclusively, and without equivocation, testified that, in his opinion, no damage to the wine occurred during its shipment to Florida." (SOF 52.) CA further argued, in opposing GN's dispositive motion, as follows:

> Mr. DiNardo's deposition testimony clearly states that it is his opinion that the wine was not damaged during transportation from Chicago to Naples, Florida. Since Plaintiff did not suffer any damages as a result of his contract with [CA] to arrange for the transportation of wine from Chicago to Florida, it is not entitled to judgment on the pleadings on the breach of contract claim. To the extent that any of [CA's] prior Answers to Plaintiff's Complaint are inconsistent with the position that the wine suffered no damage during transportation, [CA] is seeking leave to file an Amended Answer. (SOF 52).

Based upon Mr. DiNardo's testimony and CA's court filings, it is clear that both CA and Flagship mutually agree and are both bound by such admissions and by Mr. DiNardo's facts that the wine was undamaged but, to the extent any damage could be found, it did not result from transportation of the wine. Therefore, as a matter of law CA cannot establish that any alleged breach by Flagship could have caused damage. CA cannot establish its claim.

CA benefitted from its conclusive adoption of Mr. DiNardo's facts and opinions and CA cannot now disavow them after receiving a benefit from such adoption.[4] The doctrine of judicial estoppel precludes CA from contradicting its adoption of the testimony of Mr. DiNardo and its argument, based on that testimony, that the wine at issue in this case "was not damaged during transportation from Chicago to Naples, Florida."

> The doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding **or in an earlier phase of the same legal proceeding**…The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system. New Hampshire v. Maine, 532 U.S. 742, 750 (2001); See also United States v. Levasseur, 846 F.2d 786, 792 (1st Cir.1988).

---

[4] Please note the Confidential Settlement Agreement, submitted in camera. (SOF 59).

In line with this prophylactic purpose, courts typically invoke judicial estoppel when a litigant is "playing fast and loose with the courts." Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir.1987).

"[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." New Hampshire, 532 U.S. at 750 quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982). Several factors in applying judicial estoppel are considered but none alone are determinative: (1) is the party's later position "clearly inconsistent" with its earlier position; (2) has the party succeeded in persuading a court to accept that party's earlier position; and (3) will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire, 532 U.S. at 750. The party invoking the doctrine of judicial estoppel is not required to show prejudice. Czajkowski v. City of Chicago, Ill., 810 F. Supp. 1428, 1435 (N.D. Ill. 1992). It is within the Court's discretion to consider a statement of fact contained in a brief to be judicial admissions. See Clark v. Robert W. Baird, 152 F.Supp.2d 1040, FN. 2 (N.D. Ill. 2001) citing American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1988)

In evaluating issues surrounding the second factor, a person who secures a favorable settlement rather than a court ruling has "'prevailed' as surely as persons who induce the judge to grant summary judgment." Hartford Fire Ins. Co. v. Leahy, 774 F. Supp. 2d 1104, 1116 (W.D. Wash 2011) quoting Kale v. Obuchowski, 985 F.2d 360, 362 (7th Cir. 1993). See also Rissetto v. Plumbers & Steamfitters Local, 343, 94 F.2d 597, 604-05 (9th Cir. 1996) (Obtaining favorable settlement is equivalent to favorable judgment and constitutes "success" for purpose of applying judicial estoppel); Anderson v. Holy See, 878 F. Supp. 2d 923, 937 (N.D. Ill. 2012) (although the

court did not apply judicial estoppel in that case, the court recognized that a settlement may be sufficient to show that the party to be estopped prevailed in the prior case for purposes of applying judicial estoppel regardless of whether a judicial decision was obtained); Czajkowski, 810 F. Supp. at 1447 (N.D. Ill. 1992) ("Stipulations or settlements can also provide a basis for applying judicial estoppel.")

In this matter, CA cannot contradict its adoption of Mr. DiNardo's conclusion, stated at deposition that the wine was undamaged and, to the extent any damage could be found, it did not result from transportation of the wine. Attempting to create an issue of fact on this issue would clearly require CA to adopt a later position "clearly inconsistent" with its earlier position.

Moreover, CA has clearly benefitted from its adoption of Mr. DiNardo's conclusion. In May 2014, the parties held a settlement conference before Magistrate Keys but the parties were unable to reach a settlement. (SOF 58). Soon thereafter, on June 2, 2014, CA adopted the expert report of Tom DiNardo and adopted all of his opinions including the conclusion that the wine was not damaged as a result of transportation. In June 2014 and in July 2014, the parties took the deposition of Tom DiNardo in two parts. As noted above, during the first part of his deposition[5], Mr. DiNardo reiterated his unqualified conclusion that the wine was undamaged as a result of transportation. On July 10, 2014, CA filed its Response to GN's Motion for Judgment on the Pleadings. In that Response, CA quoted directly from Mr. DiNardo's testimony, particularly the part of the testimony wherein Mr. DiNardo stated his conclusion. (SOF 52). Prior to the time this Court issued its ruling on GN's motion, CA reached a favorable settlement with GN. (SOF 57) (See also SOF 59). It was only after CA relied on Mr. DiNardo's testimony in its Court filing that it was able to arrive at a settlement. In other words, CA obtained a favorable result only after

---

[5] Mr. DiNardo also reiterated his conclusion during the second part of his deposition on July 23, 2014.

it relied on CA's and Flagship's expert's conclusion that the wine was not damaged as a result of transportation.

In Kale v. Obuchowski, 985 F.2d 360, 362 (7th Cir. 1993), a plaintiff asserted a claim arguing that he owned a 1/6th interest in real property located in an industrial park in Chicago Ridge. In previous divorce proceedings, the plaintiff had asserted that he did not own any real property outside of his marital home. The plaintiff argued that his second claim was not subject to the doctrine of judicial estoppel because the divorce proceeding had settled and the Court had not actually decided an issue adversely to him. The 7th Circuit rejected holding that a settlement can provide a basis for applying judicial estoppel on the same basis as a Court decision. It stated, "Persons who triumph by inducing their opponents to surrender have "prevailed" as surely as person who induce the judge to grant summary judgment." Kale, 985 F.2d at 362.

If CA is not held to the position it has taken regarding the lack of damage to the wine as a result of transportation, Flagship will be adversely affected to its detriment. Flagship has invested considerable time in preparing this summary judgment motion in reliance on CA's current position. Furthermore, because CA took the position it took, Flagship refrained from further settlement. In other words, Flagship had no incentive to involve itself in further settlement discussions because CA had admitted in its designation of Tom DiNardo and its court filings that it did not have a breach of contract claim against Flagship. Any attempt by CA to reverse course at this point would be a clear example of a litigant "playing fast and loose with the courts." Patriot Cinemas, Inc, 834 F.2d at 212. This is exactly the type of conduct the doctrine of judicial estoppel is designed to prevent.

In this matter, the facts are clear and unopposed that CA cannot prove a claim for breach of contract against Flagship because CA admits by adopting the opinion of Tom DiNardo that

the purported breach – transportation by dry van – did not cause any damage. As such, Flagship is entitled to summary judgment on CA' claim for breach of oral contract.

VI.     **ARGUMENT: Flagship Is Entitled to Summary Judgment On Its Claim For Freight Charges**

In Count II of its Counterclaim, Flagship seeks payment for the transportation services on the three wine shipments arranged by Flagship. In order to succeed, Flagship must prove (1) the existence of a valid and enforceable contract; (2) performance by Flagship; (3) breach of contract by CA; and (4) resultant injury to Flagship. Timan v. Ourada, 972 N.E.2d 744 (Ill. App. Ct. (2nd Dist.) 2012). The facts are uncontradicted that Flagship satisfies each element of its claim.

CA admits in its Answer that CA accepted Flagship's offer to arrange for the transportation of three shipments of wine for a price of $3,270.00 per shipment. (SOF 13). CA's office manager confirmed that CA agreed to pay Flagship $3,270 for each of the three shipments of wine totaling $9,810.00. (SOF 13). There is no dispute that Flagship arranged transportation of the three shipments as each of the shipments was picked up and delivered. (SOF 22, 24).

CA admits that it did not pay Flagship's invoices for arranging the three shipments, including the second shipment for which no claim was made. (SOF 14). Because CA did not pay Flagship for its services, Flagship suffered damages in the amount of $9,800.00 which was the parties' agreed-upon price.

CA cannot argue that Flagship did not fully perform the contract based upon a claim that CA requested Flagship to arrange the transportation of the shipments by refrigerated trailer. Even if this assertion were true (which it is not), CA's assertion is immaterial.[6] In Illinois, a party suing for breach of contract need only allege and prove substantial compliance with all the

_____

[6] Of the three shipments, the facts are unopposed that the second shipment was actually transported on a refrigerated trailer. No claim has been made as to the wine that was purportedly contained on the second shipment. (SOF 29). Therefore, as to the second of the three shipments, CA does not even assert that there was a breach.

material terms of the agreement. A partial breach by one party does not justify the other party's subsequent failure to perform. Insureone Indep. Ins. Agency, LLC v. Hallberg, 2012 IL App (1st) 092385, ¶33 (2012). As noted above, CA has acknowledged and taken the position to its benefit that none of the wine transported to Naples, Florida was damaged as a result of transportation. Flagship's performance secured the results for which CA contracted and payment is due.

Assuming, *arguendo*, that Flagship had breached a promise to arrange refrigerated transportation on the three shipments, the alleged breach did not result in in any damage to the wine. Therefore, the alleged failure of performance by Flagship is irrelevant because CA received the benefit of its bargain: the arrangement of transportation from Chicago to Naples, Florida and the safe arrival of the goods transported. As such, Flagship is entitled to summary judgment on Count II of its Counterclaim.

**VII: ARGUMENT: Flagship Is Entitled To Relief Pursuant To 49 U.S.C. §(a)(2)(e).**

CA acted as an unlicensed broker in violation of Part 135 of the Interstate Commerce Act. Interstate Brokering of motor carriage requires a license. 49 U.S.C. §13901. CA arranged interstate transportation meeting the definition in 49 U.S.C. §13102(2) and 49 CFR § 371.2. See the Contract. (SOF 8,10-11) and CA's lack of authority (SOF 12).

Based on CA's clear violation of the registration requirements, Flagship is entitled to the above enumerated damages under 49 U.S.C. § 14704(a)(2) which affords a private cause of action for damages for violations of the Motor Carrier Act and its implementing regulations. OOIDA v. New Prime, Inc., 192 F.3d 778, 785 (8th Cir. 1999).

CA had a duty as a broker under Federal law to transmit payments for transportation where that broker's customer is duty bound under Federal law to pay. See 49 C.F.R. § 371.10.[7] Once CA received payment from Mr. Searle (SOF 11), CA had a legal obligation to transmit that payment to Flagship who paid the carriers and Flagship had an absolute right to receive such payments. CA breached its Federally-mandated duty to transmit such payments. (SOF 14).

Because of this, pursuant to 49 U.S.C. § 14704(e), "The district court shall award a reasonable attorneys' fee under this section. The district court shall tax and collect that fee as part of the costs of the action." Because the facts are unopposed that CA is liable to Flagship for CA's breach of its statutory and regulatory obligations under Federal law, Flagship is entitled to recover its attorneys' fees.

WHEREFORE, Flagship respectfully requests this Honorable Court enter Judgment for Flagship and against CA on CA's 2nd Amended Third Party Complaint and award Flagship its costs on such claim, and enter Judgment for Flagship and against CA on Flagship's Counterclaim allowing Flagship damages in the amount of $9,800.00 plus prejudgment interest, costs and attorneys' fees.

Respectfully submitted,

FLAGSHIP LOGISTICS GROUP

Daniel C. Sullivan, dansullivan@shlawfirm.com
Matthew P. Barrette, mattbarrette@shlawfirm.com
Sullivan Hincks & Conway
120 W. 22nd St., Ste. 100
Oak Brook, Illinois 60523
(630) 573-5021

By: /s/ Matthew P. Barrette
    One of Its Attorneys

---

[7] "§ 371.10 Duties and obligations of brokers. Where the broker acts on behalf of a person bound by law or the FMCSA regulation as to the transmittal of bills or payments, the broker must also abide by the law or regulations which apply to that person."

15