UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY a/s/o GIDEON SEARLE and NANCY S. SEARLE, <br><br> Plaintiff, <br><br> v. <br><br> CELLAR ADVISORS, LLC, <br><br> Defendant. <br><hr> CELLAR ADVISORS, LLC <br><br> Third Party Plaintiff, <br><br> v. <br><br> SATARIA ACQUISITION LLC d/b/a FLAGSHIP LOGISTICS GROUP, <br><br> Third Party Defendant. | No. 12 C 9343 <br><br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

After Gideon and Nancy Searle hired Cellar Advisors ("CA") to organize and ship roughly 20,000 bottles of wine from Illinois to Florida, CA contracted with Sataria Acquisition LLC d/b/a Flagship Logistics Group ("Flagship") to arrange the actual transportation. Alleging that the wine had been damaged during the trip, the Searles collected an insurance claim of over $2 million. As subrogee of the Searles, Plaintiff Great Northern Insurance Company—who paid out the $2 million claim—filed a civil suit against CA, and CA subsequently filed a third-party claim against Flagship. Flagship then filed a counterclaim against CA for unpaid invoices and attorneys' fees. The case is presently before the court on Flagship's motion for summary

1

judgment on CA's third-party claim and on Flagship's counterclaim against CA.

## FACTS

Gideon and Nancy Searle own an extensive collection of valuable wine. On June 1, 2012, Mr. Searle contracted with CA to organize his wine collection and, among other things, arrange for its transportation from Chicago, Illinois to Naples, Florida. Their contract specified that the maximum storage temperature of the wine was 55 degrees Fahrenheit. CA subsequently contracted with Flagship to organize the physical transportation of the wine. According to CA's Office Manager, CA requested that the wine be shipped in a refrigerated truck and Flagship agreed, but not in writing.

To prepare the wine for shipment, CA entered the vintage and appellation of each bottle into a computer database before packaging the wine. To consolidate the shipments, CA loaded the boxes onto a refrigerated straight truck and transported them to LaGrou Distribution Systems' Warehouse in Des Plaines, Illinois. When the wine was picked up at LaGrou's warehouse, no one from CA was present to monitor and supervise the wine while it was loaded onto delivery trucks.

CA accepted delivery of all three shipments in Florida, but noted that two of them arrived at temperatures in excess of the requested 55 degrees Fahrenheit. Alleging that the wine was damaged, Mr. Searle filed an insurance claim with Great Northern Insurance Company, which paid out $2,041,406.25, and the 17 allegedly bad pallets of wine (out of 25 total) were transported to another refrigerated warehouse. After paying Mr. Searle, Great Northern Insurance Company sued CA for $2,041,406.25, and CA filed a third-party suit against Flagship. Extensive discovery ensued and discovery is now closed.

On April 30, 2014, Flagship made expert disclosures pursuant to FRCP 26(a)(2).

Flagship designated Tom DiNardo as an expert witness and disclosed DiNardo's expert opinions. DiNardo rendered his opinions after personally inspecting each and every bottle contained in the allegedly damaged 17 pallets and performing a taste sampling of 80 bottles. DiNardo concluded "with reasonable certainty" that only 117 bottles out of 6,012 in the collection suffered damage or were destroyed as a result of heat damage. DiNardo also concluded that the "small number of bottles showing heat damage were not destroyed as a result of transportation of the whole collection from Chicago, Illinois to Naples, Florida." CA did not make an expert disclosure on the April 30, 2014 due date. All three parties held a settlement conference before Magistrate Judge Keys in May 2014, but were unable to reach a settlement.

On July 10, 2014, CA filed a document entitled "Cellar Advisors LLC's Response to Plaintiff's Motion for Partial Judgment on the Pleadings," wherein CA adopted and relied upon DiNardo's deposition in its attempt to defeat Great Northern Insurance Company's Renewed Motion for Judgment on the Pleadings. Subsequent to CA's adoption and reliance on the expertise of Tom DiNardo, Great Northern Insurance Company settled with CA and withdrew its Motion for Judgment on the Pleadings. Great Northern Insurance Company's interest and participation in this case as a party is settled and is substantively withdrawn.

## LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## DISCUSSION

### I. CA's Breach of Contract Claim

In order to succeed on a claim for breach of oral contract against Flagship, CA must prove (1) the existence of a valid and enforceable contract, (2) substantial performance by CA, (3) a breach by Flagship, and (4) damages resulting from the breach. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752 (Ill. App. Ct. 2004)). "A party requesting damages must show causation, that is that the alleged breach is the cause of those damages, with

4

reasonable certainty." *TAS Distrib. Co.*, 491 F.3d at 633. It is axiomatic that the plaintiff must suffer damages as a result of a breach of contract in order to have a valid claim. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 450 (3rd Dist. 2009).

Flagship argues that, by disclosing DiNardo as its expert and adopting his fact-findings and opinions in its response to Great Northern Insurance Company's motion, CA is necessarily bound by the facts that (1) only 117 bottles out of 6,012 wine bottles suffered damage or were destroyed as a result of heat damage and (2) the small number of bottles showing heat damage were not destroyed as a result of transportation of the whole collection from Chicago, Illinois to Naples, Florida. Flagship bases its argument on the doctrine of judicial estoppel.

Judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). To establish the application of judicial estoppel, a litigant must show that its opponent successfully made a representation to one tribunal and is attempting to reverse itself before another. *See In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010); *see also Butler v. Round Lake Police Dep't*, 585 F.3d 1020, 1022–23 (7th Cir. 2009). Although the doctrine has no precise bounds, certain clear prerequisites exist for its application. *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (citing *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992)). "In determining whether a party is judicially estopped from raising an argument, we examine three factors: (1) whether the party's positions in the two litigations are clearly inconsistent; (2) whether the party successfully persuaded a court to accept its earlier position; and (3) whether the party would derive an unfair advantage if not judicially estopped." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (citing *New Hampshire*, 532 U.S. at 750–51).

We need not analyze all of these factors, however, because CA did not successfully persuade a court to accept its earlier position. This requirement is an essential element of judicial estoppel. *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990); *Eagle Found., Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir.1987). CA did not successfully persuade me to accept its earlier position because Great Northern Insurance Company and CA reached a settlement before I made any judicial finding in favor of CA.

The general rule is that settlements do not imply a judicial endorsement or acceptance of a litigant's assertions. *See Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 666 (Fed. Cir. 1988)*; see also Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980). An exception to this rule occurs in certain cases where the court played a special role in the settlement by approving its details or participating as a mediator. In *Kale v. Obuchowski*, for example, the Seventh Circuit held that the appellant was judicially estopped from claiming that he owned certain assets during a business dispute in bankruptcy court after he denied owning them during an earlier divorce proceeding in state court. 985 F.2d 360, 361–62 (7th Cir. 1993). The divorce proceeding in *Kale* was resolved with a court-approved divorce settlement. *Id.* at 361. Unlike the settlement in *Kale*, I played little to zero role in the settlement between Great Northern Insurance Company and CA. I did not approve the details of their settlement, nor was I even made aware of them. Furthermore, CA adopted DiNardo's testimony *after* participating in an unsuccessful settlement conference.

Because I did not make any judicial findings of fact or law with regard to the settlement between Great Northern Insurance Company and CA, the integrity of the judicial process is left intact if I allow CA to refrain from adopting Tom DiNardo's opinion. Consequently, CA has enough evidence to overcome Flagship's motion for summary judgment.

Whether the Searles' wine was actually damaged and whether this damage, if it happened at all, was caused by Flagship's conduct are both genuine issues of material fact. Because a reasonable juror could find in its favor after hearing Marc Lazar's direct testimony as well as CA's DiNardo cross-examination, I must deny Flagship's motion for summary judgment.

**II.     Flagship's Counterclaim**

In its counterclaim, Flagship seeks recovery for a breach of contract for non-payment of transportation provided in the amount of $9,810 for three shipments and additional damages for CA's unlawful actions as an unlicensed motor carrier broker under 49 U.S.C. § 14704(a)(2). Both of these counterclaims depend on whether Flagship materially breached its contract by causing the alleged damages—as discussed above, this is a genuine issue of material fact. Summary judgment is therefore inappropriate at this time.

**CONCLUSION**

Judicial estoppel is not appropriate in this case. Whether the Searles' wine was actually damaged and whether this damage was caused by Flagship's conduct are both genuine issues of material fact. Accordingly, I deny Flagship's motion for summary judgment.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 5, 2015